1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

10

ADONIS LA REYNAGA QUINTERO,

CASE NO. C14-958 MJP

11

Petitioner,

ORDER ON REPORT AND
RECOMMENDATION

12

v.

13

NATHALIE R. ASHER, et al.,

14

Respondents.

15

16    The above-entitled Court, having received and reviewed:

17    1.  Report and Recommendation (Dkt. No. 19)

18    2.  Petitioner's Objections to Magistrate's Report and Recommendation (Dkt. No. 20)

19    3.  Respondents' Objections to Magistrate's Report and Recommendation (Dkt. No. 21)

20    4.  Respondents' Return on Habeas Petition (Dkt. No. 12), Petitioner's Response to the

21        Return (Dkt. No. 14) and Respondents' Reply in Support of Return (Dkt. No. 18)

22    and all attached declarations and exhibits, declines to adopt the Report and Recommendation and

23    makes the following ruling:

24

1    IT IS ORDERED that Respondents' motion to dismiss is DENIED.

2    IT IS FURTHER ORDERED that Petitioner's motion for a preliminary injunction is

3    STRICKEN as moot in light of the fact that the Court is granting his request for a writ of

4    mandamus.

5    IT IS FURTHER ORDERED that Petitioner's petition for writ of habeas corpus is

6    DENIED to the extent that it requests Petitioner's immediate release.

7    IT IS FURTHER ORDERED that Petitioner's request for a writ of mandamus is

8    GRANTED and Respondents are ordered to provide a bond hearing for Petitioner within five (5)

9    business days of the filing of this order.

10   **Background[1]**

11   In October 1998, Petitioner (a native of El Salvador) entered the United States illegally.

12   An immigration judge issued a removal order for him *in absentia* in August 2009.  In May 2010,

13   Petitioner was removed to El Salvador and in October 2011 he re-entered this country illegally.

14   While in custody in Jackson County, Oregon in June 2013, Petitioner entered U.S.

15   Immigration and Customs Enforcement (ICE) custody and on June 19, 2013 he was served with

16   a Reinstatement of Removal Notice.  In July and August of 2013, Petitioner failed to complete

17   two interviews and failed to complete the proper documents for the Consulate of El Salvador,

18   thus delaying the issuance of his travel documents.  ICE issued Petitioner Notices for Failure to

19   Comply twice during those two months for his failure to cooperate; Petitioner refused to sign

20   acknowledgements of either form.

21   Meanwhile, Petitioner had filed a motion to reopen and review his removal order in

22   August 2013 (claiming that he had received no notice of the removal); an automatic stay of

23

24   [1] Except where indicated, facts are drawn from the Declaration of Scott Bushnell (Dkt. No. 12-1) and
Declaration of Allison Williams (Dkt. No. 18-1); Petitioner has not challenged the accuracy of either declaration.

removal was entered at that time.  The following month, an immigration judge denied the motion to reopen and review; there is no indication that further judicial review of this decision was ever sought.

Also in August of 2013, Petitioner's case was referred to U.S. Citizenship and Immigration Services for a "reasonable fear determination" based on his expressed fear of returning to El Salvador.  Following an interview by an asylum officer in February 2014, it was found that Petitioner had not established a reasonable fear of persecution or torture in his homeland, a determination which was upheld by an immigration judge in May 2014.

ICE granted Petitioner a stay of removal from May 9 to May 23 so that he could file a U-Visa application and motion to reopen.  On May 27, 2014, Petitioner filed a motion to reopen and request for stay which was denied by an immigration judge on June 10.  A second motion to stay (filed on June 19) was denied on June 25.  On June 27, Petitioner filed the Petition for Writ of Habeas Corpus (Dkt. No. 1) and motion for preliminary injunction (Dkt. No. 2) which are presently before the Court.

Also on June 27, Petitioner filed his application for a U-Visa (Dkt. No. 17, Ex. 2).  In July, he was twice interviewed by the El Salvador Consulate; both times he informed them that he was still fighting his case and both times the consulate declined to issue travel documents.  On July 29, ICE sent an email to the El Salvador Consulate advising them that (1) Petitioner's request for stay of removal had been denied and (2) there was nothing preventing his removal. ICE requested the issuance of travel documents for Petitioner and, on August 7, 2014 served Petitioner with an I-299 (Warning for Failure to Depart) form.

On August 12, Petitioner's counsel was informed that Petitioner's U-Visa request had received a "prima facie grant" and his case was being "expedited." (Dkt. No. 17, Decl. of Bhuket, ¶ 3.) On August 18, the El Salvador Consulate issued travel documents for Petitioner.

From the declaration of Deportation Officer Allison Williams:

> On August 29, 2014, the Petitioner was scheduled to be on the next flight for removal, however, the petitioner's attorney contacted [the Office of Enforcement and Removal Operations] and stated that his client now wishes to remain in custody pending his U-visa application. Due to the fact that the petitioner has a U-visa pending with a positive prima facie determination, he was removed from the flight.

Dkt. No. 18-1 at 1-2.

Petitioner has remained in custody since that date without a bond hearing or other review of his detention status.

**Discussion/Analysis**

*Statutory detention schemes for illegal immigrants*

This is an unusual case. By statutory and regulatory rules, nothing stands in the way of La Reynaga Quintero being returned to El Salvador – his pending U-Visa application is not a bar to removal. 8 C.F.R. § 214.14(c)(ii). The only reason he is still in this country is that, as the Report and Recommendation (R&R) says, "he *asked* to stay in custody rather than be removed to El Salvador, and the government *agreed* to this request." (R&R at 4; emphasis in original.)

This case is also unusual in that both Petitioner and Respondent have objected to the R&R. Both sets of objections center on this issue: under what statutory authority is La Reynaga Quintero being held in custody and is he entitled to release or a bond hearing under that authority? Petitioner maintains that the statutory authority for his detention is 8 U.S.C. §1226(a); the Government and the Magistrate Judge contend that he is being held pursuant to 8 U.S.C.

1 §1231(a).  The Court believes that a brief discussion of the statutory scheme of immigration

2 detention is in order:

3      8 U.S.C. §1226(a) concerns the status of aliens "arrested and detained pending a decision

4 on whether the alien is to be removed from the United States."  8 U.S.C. §1231(a) governs the

5 "[d]etention, release and removal of aliens ordered removed."  The critical difference between

6 the two is that, under 8 U.S.C. §1231(a)(1), detention is mandatory for a 90-day "removal

7 period;" under 8 U.S.C. §1226(a), detention is subject to constitutional considerations of due

8 process and unreasonable restraint and (under certain circumstances) an immigrant so detained is

9 entitled to a bond hearing and/or release pending a final determination of the immigrant's status.

> The determination of whether an individual's detention is governed by 8 U.S.C.
> §1226(a) or 8 U.S.C. §1231(a) "can affect whether his detention is mandatory or
> discretionary, as well as the kind of review process available to him if he wishes
> to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053,
> 1057 (9th Cir. 2008).  The question of which statute authorizes Petitioner's
> detention turns on whether his reinstated order of removal is administratively
> final.  An administratively final order is governed by §1231(a), while an order
> that is not administratively final is governed by §1226(a).

Mendoza v. Asher, C14-811-JCC, Dkt. No. 14, Order on R&R at 2-3.

      Equally critical to an understanding of §1231(a) is the "90-day removal period."  Upon

issuance of a removal order, the government has 90 days to remove the immigrant from the U.S.

§1231(a)(1)(A).  Calculation of the removal period begins on the later of "the date when the

order of removal becomes administratively final" or the date of a court's final order denying

review of the removal order.  (§1231(a)(1)(B)(i) and (ii).)  The removal period shall be extended

beyond 90 days ("and the alien *may* remain in detention"[2])

> … if the alien fails or refuses to make timely application in good faith for travel or
> other documents necessary to the alien's departure or conspires or acts to prevent
> the alien's removal, subject to an order of removal.

---

[2] Implying that detention is not mandatory during the extension period.

§1231(a)(1)(C).  The above-mentioned activities are characterized as "obstruction" in the case law discussing this statute.  The issue of whether Petitioner's actions constitute "obstruction" is central to the resolution of this matter.

Two Ninth Circuit cases frame the discussion of this issue.  The first is Diouf v. Mukasey, 542 F.3d 1222 (9th Cir. 2008), which addressed the effect of prolonged "obstructionism" (Diouf, like La Reynaga Quintero, evaded apprehension for removal *and* filed a series of requests for review of his removal status following entry of his order of removal) on the removal period.  The Diouf court found that the purpose of the 90-day removal period was to "afford the government a reasonable amount of time within which to make the travel, consular, and various other administrative arrangements that are necessary to secure removal" and that "[u]sing a single 90-day clock prior to and following a lengthy period of obstruction would, in many cases, frustrate that purpose."  Id. at 1231. The Ninth Circuit's solution was to decree that "the 90-day clock could restart following the latest date of documented obstruction."  Id.

The other seminal case for the Court's analysis is Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008).  In that case, the government attempted to characterize Prieto-Romero's requests for judicial review of his removal status as extending his removal period under §1231(a)(1)(C) ("conspires or acts to prevent the alien's removal").  The Ninth Circuit rejected that characterization, observing that

> … we are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal."  *See §1231(a)(1)(C).*  We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. [*citations omitted*]  Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.

Id. at 1061.

1    With this framework in mind, the Court will analyze the R&R and the legal arguments of

2    Petitioner and Respondents.

3    *Report and Recommendation*

4    The Magistrate Judge recommends denial of Petitioner's motion for preliminary

5    injunction and his request for habeas corpus, plus granting of Respondents' motion to dismiss

6    and dismissal with prejudice.

7    The Court agrees with the R&R on a number of points.  First, the pending U-Visa

8    application process has no effect on whether Petitioner's reinstated removal order is final.  *See*

9    C.F.R. § 214.14(c)(iii) ("The filing of a petition for U-1 nonimmigrant status has no effect on

10   ICE's authority to execute a final order…")[3].  Second, La Reynaga Quintero is subject to a final

11   reinstated order of removal (*see* R&R at 3) and there is no statutory bar to his removal: "the only

12   reason petitioner's detention continues to this day is that he *asked* to stay in custody rather than

13   be removed to El Salvador, and the government *agreed* to this request."  (Id. at 4; emphasis in

14   original.)  Third, La Reynaga Quintero is detainable under §1231(a), not §1226(a), for the very

15   reason that he is subject to administratively final order of removal.[4] (Id. at 5.)

16   And, finally, Petitioner's request to stay in custody pending adjudication of his U-Visa is not

17   "obstructionist" as that term is defined under §1231(a)(1)(C).  For the reasons cited above in

18   Prieto-Romero, the Court finds that Petitioner availing himself of "judicial review and remedies"

19   by means of seeking a U-Visa does not constitute "conspir[ing] or act[ing] to prevent [his]

20   removal" under §1231(a)(1)(C); i.e., is not "obstructionist."

21   Where this Court departs from the reasoning of the R&R is in its conclusion that "[La

22    Reynaga Quintero] is currently subject to mandatory detention under 8 U.S.C. § 1231(a)(2)

23   _____

[3] Petitioner does not even address or contest this point in his Objections.

24   [4] Even Petitioner concedes that he is subject to a final order of removal.  (Pet. Objections, Dkt. No. 20 at 1.)

1    because the removal period has been extended pursuant to 8 U.S.C. § 1231(a)(1)(C)."  (R&R at

2    5.)  Attempting to follow the <u>Diouf</u> formula, the R&R finds that the "latest date of documented

3    obstruction" is marked by ICE's August 7, 2014 I-299(a) Form (Warning for Failure to Depart)

4    and calculates his 90-day removal period from that date (meaning that the 90-day period would

5    have expired on November 6, 2014 – a date which had yet to occur when the R&R was filed).

6         The R&R presents no authority for the conclusion that the ICE form marks "the most recent

7    date of obstruction" and the Court fails to see how it can accurately be labeled as such.  Since La

8    Reynaga Quintero had no control over when ICE issued the form, the Court finds that  it cannot

9    constitute behavior "conspiring or acting to prevent his removal" on Petitioner's part.  The state

10   of the evidence is of no assistance: the I-299(a) form is not included as an exhibit, so there is no

11   evidence before the Court regarding what actions on Petitioner's part constituted the "failure to

12   depart" from ICE's perspective.  This is inconclusive evidence at best.  The I-299(a) Form

13   cannot be used to calculate Petitioner's 90-day removal period.

14        The Court finds that the only behavior of Petitioner's which qualifies as "obstructionist" is

15   his repeated refusal to cooperate with the El Salvadoran authorities in July and August of 2013

16   as they sought to interview him to prepare his travel documents.  As soon as he filed for a

17   review of his status based on his fear of returning to his homeland (on August 26, 2013), his

18   actions ceased being obstructionist.  Even if his request for administrative review of his status

19   (an ICE officer makes the determination of whether the fear is reasonable) is not enough to

20   qualify as "non-obstructionist," his motion to reopen the review of his removal order (on August

21   29, 2013) certainly is – an automatic stay of removal was entered on that date.  <u>Prieto-Romero</u>

22   makes clear that any attempt to make use of "legally available judicial review and remedies"

23   does not invoke the "suspension of removal period" under §1231(a)(1)(C).

24

1    Based on the Court's determination that Petitioner has not been "obstructing" his removal

2    for §1231(a)(1)(C) purposes since August 2013, the question becomes: when did the 90-day

3    removal clock start ticking and when did it expire?  §1231(a)(1)(B) says the clock starts ticking

4    on the <u>later</u> of two dates: when the removal order is administratively final or when it is

5    "judicially" final (the final ruling denying review or the request to overturn the removal order).

6        The Court agrees with Respondents that the removal order was *administratively* final

7    when the Petitioner was served with the Reinstatement of Removal Notice: June 19, 2013.  But

8    beginning in August of 2013, Petitioner began to seek "legally available judicial review and

9    remedies" that stopped (and re-set) the 90-day removal clock.  It could not start ticking again

10    until a court's final ruling signaling the end of judicial review of his removal order.  That date is

11    either June 10, 2014 (when the immigration judge denied Petitioner's second motion to reopen

12    his removal proceedings and stay his removal) or June 25, 2014 (when ICE denied his second

13    motion to stay).[5]  Whichever date it is, nothing that happened between either of those two dates

14    and the end of the 90 days sometime in September operated to suspend (by way of

15    "obstruction") or stay (by way of judicial order) the running of that 90-day clock.

16        Therefore, as of sometime in September 2014, Petitioner was "beyond the removal

17    period" and became subject to detention or release under §1231(a)(6):

18        Inadmissible or criminal aliens.  An alien ordered removed who is inadmissible
         under section 212 [*8 USCS § 1182*]… or who has been determined by the
19        Attorney General to be a risk to the community or unlikely to comply with the
         order of removal, may be detained beyond the removal period, and, if released,
20        shall be subject to the terms of supervision in paragraph (3).[6]

21    _____

22        [5] Since, by either calculation, the 90 days have already run, the Court finds it unnecessary to this ruling to
     determine which of the two dates is correct.
23        [6] La Reynaga Quintero is inadmissible under 8 USCS § 1182(a)(6)(A)(i): "An alien present in the United
     States without being admitted or paroled, or who arrives in the United States at any time or place other than as
24    designated by the Attorney General, is inadmissible."

1    Detention is no longer mandatory once an alien is beyond the removal period ("… *may* be

2    detained…").  This Court is guided by the Ninth Circuit holding in a second "Diouf" case, <u>Diouf</u>

3    <u>v. Napolitano</u>:

4              …prolonged detention under § 1231(a)(6), without adequate procedural
               protections, would raise "serious constitutional concerns." (*citation omitted*)  To
5              address those concerns, we apply the canon of constitutional avoidance and
               construe § 1231(a)(6) as requiring an individualized bond hearing, before an
6              immigration judge, for aliens facing prolonged detention under that provision.
               (*citation omitted*)  Such aliens are entitled to release on bond unless the
7              government establishes that the alien is a flight risk or will be a danger to the
               community.

8    634 F.3d 1081, 1086 (9th Cir. 2011).  The Court finds that Petitioner is being held under

9    § 1231(a)(6) and has been subject to prolonged detention and is likely to continue to be; on that

10   basis, he is entitled to a bond hearing where the government bears the burden of proof of

11   establishing that he is either a flight risk or a danger.  On the same basis, the Court declines to

12   adopt the Report and Recommendation.

13   <u>*Respondents' Objections*</u>

14         The Government agrees with the R&R except for the finding that "Quintero's

15   reinstatement of removal became administratively final when Quintero's withholding-only

16   proceedings were concluded rather than when the order was reinstated."  (Resp Obj'ns, Dkt. No.

17   21 at 1.)

18         As explained above, the Court agrees with the Government on this point.  The Court

19   further agrees with Respondents (and the Magistrate Judge) that Petitioner is being detained

20   under §1231(a), but (also as explained above) does not agree that Petitioner is still under a

21   *mandatory* period of detention.  For all the reasons cited *supra*, the Court finds that Petitioner is

22   beyond the removal period and is not only not *required* to be detained pending his removal, but

23   in fact is entitled to a bond hearing.

24

1 | *Petitioner's Objections*

2 |       Petitioner makes two arguments for declining to adopt the R&R.  First, he objects to the

3 | conclusion that "[Petitioner] is not entitled to an order of release or a bond hearing given that he

4 | is currently subject to mandatory detention under 8 U.S.C. §1231(a)(2) because the removal

5 | period has been extended pursuant to 8 U.S.C. §1231(a)(1)(c)."  (R&R at 5.).  Petitioner argues

6 | that he "is being held pursuant to § 1226(a) precisely because, given his *prima facie* U Visa

7 | eligibility, no final decision has been made regarding his removal."  (Pet. Objns, Dkt. No. 20 at

8 | 4.)

9 |       In making this argument, it appears that Petitioner completely ignores the existence of

10 | 8 C.F.R. § 214.14(c)(ii):

11 |      **(ii)** Petitioners with final orders of removal, deportation, or exclusion. An alien who is the subject of a final order of removal, deportation, or exclusion is not

12 | precluded from filing a petition for U-1 nonimmigrant status directly with USCIS. The filing of a petition for U-1 nonimmigrant status has no effect on ICE's

13 | authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a).

14 |

15 | There is no indication in the record that (following ICE's June 25, 2014 denial of his second

16 | motion for a stay) Petitioner filed any further request for stay of removal.  He completely ignores

17 | the Magistrate Judge's conclusion that the existence of the U-Visa application has no effect on

18 | the Government's authority to remove him, but the Court sees no other way to read this

19 | regulation.  There <u>is</u> a final order of removal concerning Petitioner and § 1231(a), not § 1226(a),

20 | applies**.**

21 |       Petitioner makes one final argument which attempts to parse the difference between

22 | "custody" and "detention."  He argues that he did not consent to his continued *detention* by

23 | requesting to remain in the U.S.  Petitioner contends that he requested to "remain in *custody*",

24 | <u>not</u> in detention, and cites several cases which hold that an alien subject to "other restraints on

1   [his] liberty, restraints not shared by the public generally," is considered to be "in custody"

2   (Veltmann-Barragan v. Holder, 717 F.3d 1086, 1088 (9th Cir. 2013), *quoting* Jones v.

3   Cunningham, 317 U.S. 236, 240 (1963)) and therefore the fact that he is subject to a final order

4   of removal means that he is "in custody" whether he is incarcerated or not; i.e., his request to

5   remain "in custody" was not an agreement to remain in detention.

6       It is not a persuasive argument.   There is no evidence before the Court as to exactly what

7   Petitioner's attorney said to the officials which resulted in Petitioner being removed from the

8   flight – the only evidence before the Court is the hearsay testimony of an ICE officer[7] who offers

9   no explanation of where she obtained the information and does not purport to be quoting the

10   words of Petitioner's attorney *verbatim*.  There is nothing beyond the ICE declarant's use of the

11   phrase "remain in custody" to establish the intended legal effect of whatever Petitioner's counsel

12   said.  The Court rejects Petitioner's position on this point.

13   *Request for preliminary injunction is moot*

14       Petitioner had requested that a preliminary injunction issue.  In light of the fact that the

15   Court intends to grant him (in part) the relief requested by his habeas corpus petition, the Court

16   finds that the request for the preliminary injunction is moot and on that basis strikes the motion.

17   **Conclusion**

18       Based on the Court's finding that Petitioner is being held under § 1231(a)(6) and is

19   entitled, on the basis of his prolonged detention, to a hearing before an immigration judge to

20   determine his eligibility for release on bond, the Court (1) denies Respondents' motion to

21   dismiss and (2) grants Petitioner's petition to the extent that it seeks a writ of mandamus

22

23       [7] "On August 29, 2014, the Petitioner was scheduled to be on the next flight for removal, however, the petitioner's attorney contacted ERO [*Enforcement and Removal Operations*] and stated that his client now wishes to remain in custody pending his U-visa application.  Due to the fact that petitioner has a U-visa pending with a

24   positive prima facie determination; he was removed from the flight."  Declaration of Williams, Dkt. No. 18-1 at ¶ 6.

1   requiring Respondents to hold a bond hearing at which the Government will bear the burden of

2   establishing that Petitioner is either a flight risk or a danger to the community.  That hearing

3   must occur within five (5) business days of the filing of this order.

4        Petitioner's request for immediate release is DENIED.

5

6        The clerk is ordered to provide copies of this order to the Magistrate Judge and all

7   counsel.

8        Dated this 12th day of January, 2015.

9

10

11

_____

Marsha J. Pechman
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24